UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BROOKS, et al., | ) |
| Plaintiff(s), | ) |
| v. | ) Case No.  4:22-cv-00169-SRC |
| FRANCIS HOWELL SCHOOL DISTRICT, et al., | ) |
| Defendant(s). | ) |

### **Memorandum and Order**

The First Amendment's protections apply equally to all viewpoints.  That courts apply strict scrutiny to discrimination based on the speaker's viewpoint, no matter the forum, demonstrates the importance of this core principle.  Through a political action committee, Plaintiffs frequently oppose the actions of their local, elected school board, particularly on issues of curriculum.  While speaking during the public-comment portion of board meetings, Plaintiffs mention the PAC—Francis Howell Families—and point the board to the trove of detailed information on the PAC's website, www.francishowellfamilies.org.  Invoking its no-advertising policy, the board has banned Plaintiffs from mentioning at board meetings "Francis Howell Families" or its website, telling them they "will be immediately stopped," cutting the microphone while one Plaintiff spoke, and threatening to permanently ban them from speaking at meetings.  Insofar as the board allows other organizations, which support the board, freer reign at meetings, Plaintiffs challenge the board's actions as viewpoint discrimination.  Having held a hearing, the Court now rules on Plaintiffs' motion for a preliminary injunction.

I.      **Background**

The following facts are either admitted in Defendants' answer to Plaintiffs' amended complaint, or come from the evidence before the Court related to Plaintiffs' motion for a preliminary injunction—including exhibits the Court accepted into evidence during the preliminary-injunction hearing the Court held on March 23, 2022.

Defendant Francis Howell School District is a public school district located in St. Charles County, Missouri. Doc. 41 at ¶ 7. The individual defendants include the Superintendent of the school district and the elected members of the District's Board of Education. Doc. 41 at ¶¶ 8–15. The board, which by its own admission "is very interested in citizen viewpoints and problems," sets aside thirty minutes of its monthly meetings for District residents and staff to address the board. Doc. 4-14. The parties refer to this as the "patron comment" segment of board meetings. Doc. 4 at p. 6; Doc. 16 at p. 1. Any District resident or staff wishing to address the board during a patron-comment segment must complete an electronic Patron Comment Request Form available 24 hours before the start of a board meeting. Doc. 22-5 at pp. 2–3. The board calls speakers in the order they signed up online. *Id.*

The District uploads video recordings of board meetings to its YouTube page, and provides a link on its website to view the videos. Doc. 16-5 at ¶¶ 12–14. The parties introduced copies of some of these videos at the preliminary-injunction hearing, and do not dispute the authenticity of the videos, including the videos posted on the District's YouTube page. Doc. 35, Tr. 5:7–22; Doc. 16-5 at ¶ 14.

The board also adopts policies and approves regulations governing the operation of the District. Doc. 35, Tr. 43:9–25. District Policy 1455, titled "Distribution of Materials in the Schools," includes a statement that "[p]artisan political campaign materials shall not be

2

distributed to students or patrons or posted within a District facility, except for appropriate educational use in the classroom." Doc. 4-5.

Policy 1471, titled "Public Solicitations/Advertising in District Facilities," states in relevant part:

> It is the intent of the District to operate a non-public forum and, except as allowed in this Policy or Regulation 1471, advertisement is prohibited on District property. The District reserves the right to further limit or to eliminate any forum created herein at any time.  For the purposes of this policy, advertisement includes, but is not limited to, in-person solicitation; signage; verbal announcements using communication equipment; pamphlets; handouts; distribution through District technology; other distribution of information regarding products or services available or for sale; or the solicitation of information including, but not limited to, political campaigning.  This policy does not prohibit speech in circumstances where it is protected by law.

Doc. 4-6.  The corresponding District Regulation 1471 states in part:

> **District Sponsored Advertisement**
>
> This Regulation is not intended to limit the use of District resources or forums by District personnel to distribute District-sponsored information or advertisements. District-sponsored groups may distribute advertisements to employees and students as determined appropriate by the superintendent/designee and/or principal. Materials from extracurricular organizations or professional groups created by the District will be considered District sponsored.
>
> **Groups Affiliated with the District**
>
> The District may allow groups affiliated with the District to advertise on District property in the same manner and to the same extent that District-sponsored groups are allowed to advertise. For the purpose of this Regulation, a group is affiliated with the District if it is recognized by the Board and 1) is working collaboratively with the District, such as a business partner, or 2) is a group that is created solely to work with the District, its staff, students and parents and to raise funds for District activities such as parent-teacher associations or booster clubs.

Doc. 16-1 at p. 3.

Plaintiffs, who reside in the Francis Howell School District, are involved with a political action committee called Francis Howell Families. Doc. 4-1 at ¶¶ 2–3; Doc. 4-2 at ¶¶ 2, 5; Doc 4-3 at ¶¶ 2–3.  Plaintiffs regularly attend school board meetings and criticize school board policies.

3

Docs. 4-1, 4-2, 4-3.  Francis Howell Families frequently opposes board action that it perceives as contrary to Francis Howell Families' views, and maintains a website, www.francishowellfamilies.org, providing more information about matters concerning District policy and school board actions.  Doc. 4-1 at ¶¶ 6–7, 11–13; Doc. 4-3 at ¶¶ 10–12; Docs. 22-6, 22-7.  The website also contains a "Donate" link and sign-up form to "stay informed and stand up for our kids."  Doc. 16-2.

During the patron-comment segment of the board meeting on August 19, 2021, Plaintiff Rash mentioned Francis Howell Families and www.francishowellfamilies.org for the first time, describing the website as a place to learn how to start helping build a better future for the school district.  Doc. 4-3 at ¶ 12; August 19, 2021 Meeting, 23:44–26:30.  Plaintiffs started selling Francis Howell Families t-shirts before school board meetings during the summer of 2021, Doc. 4-2 at ¶ 8, but relocated its t-shirt sales table across the street to private property after Defendant Hoven called one of the Plaintiffs and informed him that selling the t-shirts on District property violated Policies 1455 and 1471.  *Id.* at ¶ 9.

During the patron-comment segment of the board meeting on October 21, 2021, Plaintiffs Gontarz and Rash each criticized school board actions and mentioned that more information could be found at the Francis Howell Families website.  Doc. 4-2 at ¶ 12; Doc. 4-3 at ¶ 15; October 21 Meeting, 30:03–39:29, 42:55–43:13.  Later that week, Defendant Mary Lange emailed Gontarz, warning that if "any speakers reference Francis Howell Families or the website" at future board meetings, "they will immediately be stopped and will forfeit the remainder of their time" and "may also be prohibited from future opportunities to speak during patron comments."  Doc. 4-7.  Mary Lange also emailed Rash, stating that Rash had violated "FHSD Policy (1471)" at the October 21, 2021 meeting, and warning that "[f]uture violations

4

will result in your microphone being cut off and your time forfeited" and "may also result in you no longer being allowed to speak during patron comments." Doc. 4-8 at p. 4.

Then, during the patron-comment segment of the board meeting on November 18, 2021, Plaintiff Brooks spoke about the emails from Lange to Rash and Gontarz, and questioned the board's application of Policies 1455 and 1471. Doc. 4-1 at ¶¶ 6–7. When he mentioned www.francishowellfamilies.org, Lange interjected "we have asked you not to use that. Your time is up," and the board muted, or cut, the microphone on Brooks. *Id.* at ¶ 8; November 18, 2021 Meeting, 22:50–23:16.

In contrast, during the patron-comment segment of the board meeting on September 16, 2021, an individual referred to the organization "Black Voices Matter," a group with differing views than the views of Francis Howell Families on issues such as critical race theory, while the individual "celebrated the positive progress [the] District has taken in equitable and anti-racist actions." Doc. 4-3 at ¶¶ 25–26; September 16 Meeting, 1:07:57–1:08:33.

Similarly, during the patron-comment segment of another board meeting, the District communications director read a patron comment the board had received via online submission, which identified the commenter as a "member of MNEA." May 20, 2021 Meeting, 42:32–42:56. The Court notes that the only reference in the record to MNEA is Doc. 4-11, which identifies that MNEA stands for the Missouri National Education Association. *See* Doc. 4-11 at pp. 4, 10–12. However, as the parties do not address whether that is the organization the individual referred to at the May 20, 2021 meeting, at this stage of the case the Court does not make a finding regarding which organization that individual was referring to.

Further, during the patron-comment segment of the March 17, 2022 board meeting, several individuals directly addressed "voters of Francis Howell" and urged those listening to

vote for certain school board candidates and against other candidates.  March 17, 2022 Meeting, 24:09–24:29; 37:37–38:13; 39:00–39:18.  While the board did not cut off the microphone during these individuals' comments, Mary Lange did send the individuals a follow-up email, referring to Policies 1455 and 1471, and stating: ". . . [Y]our comments may have been viewed by some as political campaigning, so I wanted to remind you of these prohibitions.  Please keep this in mind the next time you address the Board during Patron Comments, as I don't want either of us to be in the position of having to cut off your time."  Doc. 44-4.  Plaintiffs point to the soft tone and less severe consequences of this email compared to the email they received.  Doc. 45 at pp. 8–9; Doc. 4-8 at p. 4 (warning Plaintiff Rash that "[f]uture violations will result in your microphone being cut off and your time forfeited" and that "[f]uture violations may also result in you no longer being allowed to speak during patron comments"); Doc. 4-7 (warning Plaintiff Gontarz that any speaker referencing Francis Howell Families or its website "will immediately be stopped and will forfeit the remainder of their time" and "may also be prohibited from future opportunities to speak during patron comments").

Plaintiffs claim that while they continue to speak at some board meetings, they "avoid mentioning [Francis Howell Families] or its website, and are more cautious in their word choice" in an attempt to avoid "a permanent ban from speaking at Board meetings."  Doc. 4 at p. 10.  Plaintiffs brought this suit, seeking an injunction, declaratory relief, and nominal damages, Doc. 1, and filed a motion for a preliminary injunction, Doc. 3.  Plaintiffs also filed an amended complaint, adding official-capacity claims against the individual defendants.  Doc. 28.  The Court held a preliminary-injunction hearing on March 23, 2022, and ordered the parties to provide supplemental post-hearing briefing.  Doc. 31.

6

II.     **Standard**

A court issues injunctive relief to preserve the status quo and prevent irreparable harm until the court has the opportunity to rule on the merits. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). In *Dataphase*, the Eighth Circuit "held that the relevant factors to consider when assessing the propriety of preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 401–02 (8th Cir. 2009) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "The party seeking injunctive relief bears the burden of proving these factors." *Id.* (citing *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006)).

III.    **Discussion**

Because in First Amendment cases the probability of success on the merits "is often the determining factor in whether a preliminary injunction should issue," *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012), the Court begins its analysis by considering that factor.

A.    **Probability of success on the merits**

District courts in the Eighth Circuit apply one of two standards when assessing the probability of success on the merits. *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 999 (8th Cir. 2019). In most instances, the question is whether the party requesting a preliminary injunction has a "fair chance of prevailing." *Id.* (quoting *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en

7

banc)). This standard reflects the Eighth Circuit's rejection of a requirement that a "party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits." *Dataphase*, 640 F.2d at 113. The second, "more rigorous standard," which applies when a plaintiff seeks a preliminary injunction "to enjoin the implementation of a duly enacted state statute," requires a plaintiff to show he is "likely to prevail" on the merits of his claims. *D.M. by Bao Xiong*, 917 F.3d at 1000 (quoting *Rounds*, 530 F.3d at 732). This heightened standard also applies when a plaintiff seeks to preliminarily enjoin other government actions that, like statutes, result from "presumptively reasoned democratic processes." *Id.* (quoting *Rounds*, 530 F.3d at 732).

  Here, the Plaintiffs ask the Court to enjoin the board's implementation of Francis Howell School District policies, and the parties both state that the "fair chance of prevailing" standard applies. Doc. 4 at p. 11; Doc. 16 at p. 4. The Court agrees. The Francis Howell School District Board of Education is responsible for developing policies for the District, and it adopts those policies by a majority vote. *See* Francis Howell School District Policy Manual § 0510 (Rev. Dec. 1, 2012), available at https://go.boarddocs.com/mo/fhsdmo/Board.nsf/Public (establishing that "[t]he development and adoption of policies to govern operation of the District are the responsibility of the Board of Education" and that "[a]t any meeting of the Board, policies governing the schools may be enacted, amended or repealed by a majority vote"). The policies also authorize the Superintendent of Schools to develop regulations or guidelines to implement the policies. *Id.*

  As District Policy 0510 reveals, unlike federal, state, and municipal governments, the board has no horizontal separation of powers; that is, the board is a policymaking body unto itself, without the check or balance that the executive branch serves for the legislative, and vice

8

versa. In *Rounds*, the Eighth Circuit stated that "[w]here preliminary injunctions are sought to enjoin city ordinances or administrative actions by federal, state or local government agencies, we note that the Second Circuit has examined the circumstances surrounding such government actions to determine to what extent the challenged action represents 'the full play of the democratic process' and, thus, deserves the deference of the traditional test." 530 F.3d at 732 n.6 (citing *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

In *Able*, the Second Circuit found that the heightened standard applied in a situation "where the full play of the democratic process involving both the legislative and executive branches has produced a policy in the name of the public interest embodied in a statute and implementing regulations." 44 F.3d at 131. In applying the heightened standard, the Second Circuit differentiated the circumstances at hand, where "Congress and the President engaged in lengthy public debate" before formulating the policy at issue in the case and "enacting and signing the legislation implementing it," from cases where the court applied the "less rigorous standard" because the challenged action was "taken pursuant to . . . policy formulated solely by the executive branch" or "adopted . . . altogether outside of a regulatory framework." *Id.* (citing *Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1326 (2d Cir. 1992), *vacated sub nom. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 918 (1993); *Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980)). Because the board's actions do not involve "the full play of the democratic process," the heightened standard does not apply. *See D.M. by Bao Xiong*, 917 F.3d at 1000; *Rounds*, 530 F.3d at 732 n.6 (citing *Able*, 44 F.3d at 131).

Turning to the merits, the parties agree that regulating Plaintiffs' speech during the patron-comment period of school board meetings implicates the First Amendment, applicable to the states via the Fourteenth Amendment. When "defining the parameters of a speaker's First

9

Amendment right of access to public property, the Supreme Court looks first to the nature of the forum the public entity is providing." *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334 (8th Cir. 2011); *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983) ("The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue.").

1. **Limited public forum**

When conducting forum analysis, the Supreme Court has sorted government property into three categories. *See Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010). "First, in traditional public forums, such as public streets and parks, 'any restriction based on the content of . . . speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Id.* (citation omitted). "Second, governmental entities create designated public forums when 'government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose'; speech restrictions in such a forum 'are subject to the same strict scrutiny as restrictions in a traditional public forum.'" *Id.* (citation omitted). "Third, governmental entities establish limited public forums by opening property 'limited to use by certain groups or dedicated solely to the discussion of certain subjects,'" and "[i]n such a forum, a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral." *Id.* (citation omitted); *see also Victory*, 640 F.3d at 334 (explaining that the Supreme Court's "change in nomenclature" from "nonpublic forum" to "limited public forum" did not change the standard applied to this forum).

10

The parties agree that the patron-comment section of school board meetings is a limited public forum, and that the school board may impose reasonable and viewpoint-neutral restrictions on speech during patron comments.  Doc. 4 at p. 12; Doc. 16 at p. 5.  The Court agrees.  This categorization is consistent with District Policy 0412, titled "Meetings-Participation by Public," which provides that "[a] period of thirty (30) minutes will be allotted to residents of the District and staff at the beginning of the meeting to give the Board of Education the opportunity to listen to citizens."  Doc. 4-14.  The policy articulates that "[t]he Board is very interested in citizen viewpoints and problems" and "ask[s] that remarks be limited to three minutes and to one appearance, thus allowing a maximum number of participants in the allotted time period in which citizens are to speak to issues."  *Id.*; *see Perry*, 460 U.S. at 45 n.7 (noting that "[a] public forum may be created for a limited purpose such as . . . the discussion of certain subjects," including school board business (citing *City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Emp. Rels. Comm'n*, 429 U.S. 167 (1976))).  The Court finds that the public-comment portion of the meeting is a limited public forum.

        2.      **Viewpoint discrimination**

Plaintiffs claim that Defendants engaged in viewpoint discrimination by "us[ing] Policies 1455 and 1471 to selectively censor disfavored views, while letting Plaintiffs' favored opponents speak freely."  Doc. 4 at p. 14.  The Supreme Court has emphasized that once the state opens a limited public forum, it "must respect the lawful boundaries it has itself set" and may not "discriminate against speech on the basis of . . . viewpoint."  *Martinez*, 561 U.S. at 685.  "The state engages in viewpoint discrimination when the rationale for its regulation of speech is 'the specific motivating ideology or the opinion or perspective of the speaker.'"  *Gerlich v. Leath*, 861 F.3d 697, 705 (8th Cir. 2017) (citing *Rosenberger v. Rector & Visitors of Univ. of Virginia*,

11

515 U.S. 819, 829 (1995))). Viewpoint discrimination claims, by their very nature, require courts to determine the "purposes or motives of governmental officials." *Id.* (citing *Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361, 367 (8th Cir. 1988)).

The "unique scrutiny" Defendants imposed on the Plaintiffs provides evidence of Defendants' discriminatory motive. *See Gerlich*, 861 F.3d at 705. Citing District Policies 1455 and 1471, Defendants have banned Plaintiffs from saying during the patron-comments period of school board meetings the name of their organization, Francis Howell Families, or from referring to its website, www.francishowellfamilies.org. On one occasion, Defendants cut the microphone of one of the Plaintiffs after he referred to the Francis Howell Families website as a resource the board could visit for additional information that he could not fit into his three-minute comment. However, Defendants have allowed other individuals to refer to other organizations with views either supporting the board or its favored positions, or opposing Francis Howell Families; and Defendants have allowed other individuals to engage in political campaigning during patron comments, without interruption.

For example, the board permitted an individual to refer to the "Black Voices Matter" organization during the patron-comment section of a board meeting, while the individual was recognizing "positive progress [the] district has taken in equitable and anti-racist actions." Doc. 4-3 at ¶¶ 25–26; September 16 Meeting, 1:07:57–1:08:33. As Plaintiffs point out, both Black Voices Matter and Francis Howell Families are organizations with viewpoints on board actions, and both organizations call for policy changes, but Defendants only ban references to Francis Howell Families during the patron comment period. Doc. 45 at p. 7.

As another example, during another board meeting the District communications director read a patron comment the board had received via online submission, identifying the commenter

12

as a "member of MNEA."  Doc. 39 at p. 9; May 20, 2021 Meeting, 42:32–42:56.  According to required public filings, MNEA supports candidates for public office via its own political action committee.  However, though several admitted exhibits connect MNEA to the Missouri National Education Association, *see* Doc. 4-11 at pp. 4, 10–12, the parties do not address whether that was the organization the commenter was referring to, and the Court does not make a finding regarding what specific organization the individual was referring to.  Regardless of which organization the individual was referring to, this provides another example of an individual identifying himself as a member of an organization other than Francis Howell Families during the patron-comment section of a board meeting, without reprimand or censure.

As a third example, during the patron-comment section of the March 17, 2022 meeting, the board permitted several speakers to directly address not the board but audience members and to urge those listening to vote for certain school board candidates and against candidates associated with Francis Howell Families—only thinly veiling the candidates to which the speakers referred.  Doc. 36 at p. 10: March 17, 2022 Meeting, 24:09–24:29; 37:37–38:13; 39:00–39:18.  These speakers overtly implored the audience to vote for their favored candidates—a direct affront to the board's "no political campaigning" policy—yet the board allowed the speakers to proceed, unabated.

Further, the tone of the board's after-the-fact email to these speakers stands in contrast to the emails the board sent to the Plaintiffs.  The board's email to the individuals stumping for board candidates stated that their comments "may have been viewed by some as political campaigning" and asked the individual to "please keep this in mind next time you address the Board, as I don't want either of us to be in the position of having to cut off your time."  Doc. 44-4.  The board's email to Plaintiff Rash, on the other hand, warned that "[f]uture violations will

result in your microphone being cut off and your time forfeited" and that "[f]uture violations may also result in you no longer being allowed to speak during patron comments." Doc. 4-8 at p. 4.  The Court finds that the draconian language Defendants used to address Plaintiffs, compared to the apologetic language Defendants used in emails to individuals who campaigned against Plaintiffs during patron comments, provides further evidence of viewpoint discrimination.

These actions and statements serve as evidence of viewpoint discrimination.  *See Gerlich*, 861 F.3d at 706.  And Defendants do not argue that their application of the policies was narrowly tailored to satisfy a compelling governmental interest.  Thus, based on the evidence outlined above, the Court finds that Plaintiffs have established a "fair chance of prevailing" on the merits of their First-Amendment, viewpoint-discrimination claim.  *See id.* at 707.

      **B.**      **Irreparable harm**

Well-settled law holds that the loss of First Amendment freedoms, even for minimal periods of time, "unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017).  Because the Court finds that Plaintiffs have a fair chance of succeeding on the merits of their First-Amendment claim, the Court concludes that Plaintiffs have also shown that without a preliminary injunction they will suffer irreparable harm.

      **C.**      **Public interest and balance of harms**

"[I]t is always in the public interest to protect constitutional rights."  *Phelps-Roper*, 545 F.3d at 690.  Indeed, public discourse on the propriety of governmental actions lies at the heart of the First Amendment, and the public has an interest in robust discourse on public education.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (recognizing "a profound national

commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.").

Similarly, the balance of harms "generally favors the constitutionally-protected freedom of expression." *Id.*  Defendants do not point to harm they will suffer by allowing Plaintiffs to identify the Francis Howell Families organization or its website while allowing others to do the same regarding other organizations.  The Court finds that both the public interest and balance of harms favor Plaintiffs.

**IV.    Conclusion**

The Court finds that Plaintiffs have demonstrated that they have a "fair chance of prevailing" on the merits of their claim, that they will suffer irreparable injury absent a preliminary injunction, that the balance of harms favors an injunction, and that protecting constitutional rights serves the public interest.

Accordingly, the Court grants Plaintiffs' [3] Motion for Preliminary Injunction.  The Court enjoins Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of this injunction from enforcing Francis Howell School District Policies 1455 and 1471 to prohibit Plaintiffs' reference to "Francis Howell Families" or the Francis Howell Families website, www.francishowellfamilies.org, while addressing the school board during the patron-comment period at school board meetings.  This preliminary injunction takes effect immediately and remains in effect pending trial in this action or further order of the Court.

While the express language of Federal Rule of Civil Procedure 65(c) requires a bond, the "amount of the bond rests within the sound discretion of the trial court," and the Eighth Circuit

15

has approved the issuance of preliminary injunctions without bond in certain circumstances, including where the party to be enjoined has not shown that it would suffer damages.  *See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engineers*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976) and collecting cases).  Based on the Court's evaluation of the public interest, the potential chilling effect of requiring a bond, and the fact that Defendants have not shown that the wrongful issuance of an injunction would result in damages, the Court waives the bond requirement.  *See id.*

      So Ordered this 21st day of April 2022.

                                                 /s/ *SL R. CR*
                                          STEPHEN R. CLARK
                                          UNITED STATES DISTRICT JUDGE